UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TAMERA HAASE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DINDOT-KLUSMANN FUNERAL HOME, JAY M. KLUSMANN,<br><br>　　　　　Defendants. | 4:24-CV-04047-RAL<br><br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiff Tamera Haase brings this action against Dindot-Klusmann Funeral Home (the "Funeral Home") and its funeral director and co-owner Jay M. Klusmann. Among other things, Haase alleges that Defendants violated her right to control the funeral arrangements and disposition of her father's remains under South Dakota law. Doc. 1. Haase now moves for partial summary judgment on the question of liability for her claims of negligent infliction of emotional distress, negligence, professional malpractice, and violations of SDCL § 34-26-75 and the right of sepulcher. Doc. 29.

I.     **Material Facts in Light Most Favorable to Non-Movant Defendants**

Haase's father, William Shumaker ("Bill"), passed away on November 20, 2023, in his home near Lennox, South Dakota. Doc. 31 ¶ 4; Doc. 33 ¶ 4. Bill had three biological children from his first marriage—his daughter, Tamera Hasse, and two sons, Eric and Jeffrey Shumaker. Doc. 31 ¶ 1; Doc. 33 ¶ 1. Bill also had four stepchildren from his second marriage to Javene Shumaker ("Javene")—Nicole Barnhart, Michelle Shyne, Michael Smith, and Laurie Rhyner.

1

Doc. 31 ¶ 21; Doc. 33 ¶ 1; Doc. 35 at 53. This dispute arises from Defendants' handing of funeral arrangements and interment of Bill next to his late wife Javene against the wishes of Bill's biological children, though consistent with the wishes of Bill's stepchildren.

In June 2013, Bill executed a Last Will and Testament ("the Will") leaving his estate to Javene, but if she passed away before him, Bill directed his property to be shared equally among his four stepchildren. Doc. 1-1 at 1; Doc. 35 at 53. The Will included a section intentionally making no provision for Bill's three biological children. Doc. 1-1 at 2; Doc. 35 at 54. Bill did not leave any written instruction in his Will or elsewhere regarding who was to decide his final arrangements or what should happen to his remains upon his death. Doc. 31 ¶ 20; Doc. 33 ¶ 20; Doc. 1-1 at 1–2; Doc. 35 at 53–54.

Javene died in 2014. Doc. 31 ¶ 21; Doc. 33 ¶ 21. Bill directed Javene's funeral arrangements at a local church, used the Funeral Home and Klusmann for his wife's arrangements, and purchased a grave site and headstone for Javene and himself. Doc. 31 ¶ 17; Doc. 33 ¶¶ 17, 32–33. Bill purchased space for a grave site next to Javene and had his name placed on the headstone alongside Javene's name. Doc. 33 ¶¶ 14, 56; Doc. 42-1 at 19–20.

Bill outlived Javene by nearly ten years, passing away on Monday, November 20, 2023. Bill's stepdaughter Barnhart discovered his body after Bill's employer asked her to perform a wellness check. Doc. 33 at 5. Barnhart arranged for Bill's remains to be transported that evening to the Funeral Home and told Klusmann that Bill wanted a funeral just like Javene's. Doc. 31 ¶ 4; Doc. 33 ¶¶ 4, 36–37. Barnhart and Klusmann arranged to meet at 1:00 p.m. on Tuesday, November 21, 2023. Doc. 31 ¶ 6; Doc. 33 ¶ 6. Barnhart also notified Haase that her father had died.

Haase called Klusman, who was surprised to learn that Bill had biological children. Doc. 31 ¶ 7; Doc. 33 ¶ 7. Bill's biological children had not attended Javene's funeral. Doc. 33 at ¶ 34.

Klusmann told Haase that according to South Dakota law, the priority for determining the disposition of decedent's remains were first the wishes of the decedent, second the wishes of the surviving spouse, and that as Bill's next-of-kin she would be in the next decision-making group. Doc. 31 ¶ 8; Doc. 33 ¶ 8. After learning that Bill had biological children, Klusmann told Bill's stepchildren that his biological children "have a say in" the arrangements and cancelled his meeting with the stepchildren. Doc. 31 ¶ 9; Doc. 33 ¶ 9. Bill's stepchildren were initially receptive to having Haase plan Bill's funeral. Doc. 33 ¶ 42.

Haase and Klusmann have different versions of what occurred during their phone conversations. Klusmann recalls Haase saying she hadn't talked to her father in twenty years, which Haase denies. Id. ¶ 16. Defendants contend that Haase was estranged from Bill, which Haase adamantly contests.[1] Klusmann recalls Haase saying that she didn't want her stepsiblings involved in any way and would prohibit them from attending Bill's visitation, funeral and burial. Id. ¶ 43. Haase expressed uncertainty whether she would allow Bill to be buried next to Javene because she didn't want to think of him buried beside a woman she didn't like. Id. ¶ 44. Haase also expressed uncertainty about having the funeral at a church. Id. In deposition testimony, Haase acknowledged that she had never spoken with her father about his desired funeral arrangements. Id. ¶ 45.

Klusmann in deposition testimony acknowledged that South Dakota law provides that the priority for determining what happens to a decedent's remains are: (1) the wishes of the decedent; (2) the surviving spouse, if any; and then (3) the decedent's biological children. Doc. 31 ¶ 8; Doc.

---

[1] Haase had lived with her father and his then-girlfriend Javene when her parents separated, but not once she graduated from high school. Id. ¶¶ 26, 28. Haase became a licensed pharmacist in Minnesota. Doc. 33 ¶ 29. The record lacks much additional information about Haase's relationship otherwise with her father.

3

33 ¶¶ 8–9. Klusmann told Haase that the standard is to "always follow the wishes of the deceased," and the Defendants hold firm to that position. Doc. 33 ¶¶ 39–40.

Early on the morning of Friday, November 24, 2023, Klusmann upon arriving at the Funeral Home was surprised to encounter Bill's stepchildren, who had let themselves in through an unlocked side door. Doc. 31 ¶ 11; Doc. 33 ¶ 11. Bill's stepchildren insisted that Klusmann needed to read Bill's Will "because [it would] tell [him] everything [he] need[ed] to know about the situation and who is to be in charge and who is to be making decisions." Doc. 31 ¶ 11; Doc. 33 ¶ 11. As stated earlier, the Will makes no provisions for Bill's biological children, but directed that Javene would receive his estate, and if she predeceased him, Bill's stepchildren would share equally in the remainder of the estate after paying his debts and funeral expenses. Doc. 35. The Will did not address who was responsible for funeral and burial arrangements.

Meanwhile, on Friday, November 24, Haase and her brothers were driving to Lennox to meet with Klusmann. Doc. 31 ¶ 12; Doc. 33 ¶ 12. Haase and her brothers received a call from Klusmann as they neared Sioux Falls, and the meeting did not occur. Haase states that Klusmann cancelled the meeting after seeing the Will and believing that the stepchildren had the ultimate authority; Klusmann denies this and instead states the meeting was open to both the biological children and stepchildren, but Haase refused to attend with the stepchildren being there. Haase repeatedly requested a copy of the Will from Klusmann, but Klusmann refused to provide it. Doc. 31 ¶ 13; Doc. 33 ¶ 13.

Bill's funeral had been set for Tuesday, November 28, 2023, with visitation on Monday, November 27. On November 27, Haase told Klusmann that he needed to provide the Will specifying that Bill's stepchildren had authority to control funeral arrangements or to pause the arrangements. Doc. 31 ¶ 15; Doc. 33 ¶ 15. Klusmann recalls this as the first instance where Haase

4

had requested to halt the visitation and funeral; Defendants refused to do so. Klusmann testified that he "looked at the situation," decided that Bill's purchase of a lot and headstone signaled what he wanted, relied on what Bill's stepchildren told him in "picking a side," and was influenced by Haase's alleged statements of not speaking with Bill for many years and wanting to exclude Bill's stepchildren from the visitation and funeral altogether. Doc. 31 ¶¶ 14, 16–19; Doc. 33 ¶¶ 14–19.

Klusmann determined that the visitation and funeral should proceed as planned, Bill should be buried next to Javene, and the arrangements should be similar to those held for Javene, which Klusmann felt reflected Bill's wishes. Doc. 31 ¶ 17; Doc. 33 ¶ 17. Barnhart directed that Klusmann reserve two pews at the church for Haase and her family, but Haase did not attend the funeral. Doc. 33 ¶ 47. Bill's funeral and burial proceeded on November 28 contrary to Haase's wishes.

## II.     Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Motg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond

the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

### III. Discussion

Haase seeks partial summary judgment on the Defendants' liability on five of her seven claims: Claim 1 for negligent infliction of emotional distress; Claim 2 for negligence; Claim 5 for professional liability and malpractice (a claim against Klusmann only); Claim 6 for violation of SDCL § 34-26-75; and Claim 7 for violation of the right of sepulcher.[2] Haase's argument about what duty Defendants had is the same for each of these claims and derives from SDCL § 34-26-75.

> SDCL § 34-26-75 states in relevant part:
>
> Except as provided in §§ 34-26-74 and 34-26-76, the right and the duty to control the disposition of a decedent's remains, including the location, manner, and conditions of disposition, and arrangements for the provision of funeral goods and services, vests in the following, in the order named, provided the person is eighteen years or older and is of sound mind:
>
> (1)   A person designated by the decedent, in accordance with § 34-26-77;
>
> . . . .
>
> (3)   The decedent's spouse;
>
> (4)   The child of the decedent or the majority of the decedent's children, provided that a lesser number must suffice if they have made reasonable efforts to notify the other children of their instructions and are not aware of any opposition on the part of the majority;
>
> . . . .
>
> (8)   The person named as personal representative in the decedent's last will and testament;
>
> . . . .

---

[2] She does not seek summary judgment on claims 3 and 4 which allege negligent misrepresentation and fraud respectively.

6

> (10) The person in the classes of the next degree of kinship, in descending order, under the laws of descent and distribution, provided if there is more than one person of the same degree, any person of that degree may control the disposition;
>
> . . . .
>
> (12) Any other willing person, including the funeral director with custody of the body, provided the person attests that reasonable efforts have been made to contact other persons listed in this section.

SDCL § 34-26-75. Haase asserts she had the right under SDCL § 34-26-75(4) to control disposition of her father's remains and that Klusmann is negligent per se by determining how Bill's remains would be disposed contrary to SDCL § 34-26-75.

Defendants argue that SDCL § 34-26-75 does not establish the standard of care. They assert a different standard of care—that Klusmann owed a duty to act as a reasonably prudent funeral director and that duty is to attempt to follow the decedent's wishes "[r]ather than mechanically follow[] the order of decision-making in SDCL § 34-26-75." Doc. 34 at 7. Defendants proffer a semi-retired funeral director as an expert to testify that a funeral director's duty of care is to follow the decedent's wishes, even when the deceased leaves no written instructions. Doc. 36. Defendants also argue that liability under South Dakota law for claims involving the right to possession of a dead body requires "willful or malicious" conduct rather than mere negligence. Defendants assert that even if SDCL § 34-26-75 is relevant to the standard of care, Haase was estranged and therefore not a person whom the statute was designed to protect.

South Dakota law governs in this diversity-of-citizenship jurisdiction case. E-Shops Corp. v. U.S. Bank Nat. Ass'n, 678 F.3d 659, 663 (8th Cir. 2012). Legal duty is a question of law for the court. Bozied v. City of Brookings, 638 N.W.2d 264, 268 (S.D. 2001). There is no South Dakota statute or case law to support that a funeral director's duty invariably is to attempt to

7

discern and follow the deceased's wishes regardless of the absence of written directives or a family squabble over what those wishes may have been. Twice in the last fifty years, the Supreme Court of South Dakota has decided cases involving claims relating to alleged mishandling of a decedent. Red Bear v. SESDAC, Inc., 896 N.W.2d 270, 278 (S.D. 2017); Chisum v. Behrens, 283 N.W.2d 235, 240 (S.D. 1979). In both cases, the court looked to provisions of SDCL Chapter 34-26 to determine the rights and duties surrounding the handling of a decedent. Red Bear, 896 N.W.2d at 277–78 (referencing SDCL §§ 34-26-14, -16(2)); Chisum, 283 N.W.2d at 239 (referencing SDCL §§ 34-26-13, -14, and -16). SDCL § 34-26-75 establishes as a matter of law the order by which individuals have the right and duty to control the disposition of a decedent's remains. A funeral director is not free to intentionally ignore the priorities in SDCL § 34-26-75 merely by presupposing to know a decedent's wishes.

But this does not mean that a decedent's wishes do not matter. Indeed, SDCL § 34-26-75 does not apply if there is a contract for disposition under SDCL § 34-26-74. Under both SDCL §§ 34-26-74 and 55-11-1, a person may enter into a preneed contract to "direct the location, manner and conditions of disposition of the person's remains." Although Bill had bought a headstone and grave site, Defendants concede that Bill had no preneed contract under SDCL §§ 34-26-74 and 55-11-1. SDCL § 34-26-74 also prioritizes a person designated by the decedent to control the disposition of the decedent's remains over all others, including the decedent's own spouse. SDCL §§ 34-26-75(1), -77. Bill did not enter into such an affidavit designating a particular person to do so. The descending subsections of SDCL § 34-26-75 place in order those typically closest to the decedent who presumably would know and honor the decedent's wishes: the decedent's spouse (unless there is a pending divorce), the decedent's child or majority of the children, the decedent's parents and so forth. A funeral home director is twelfth in line under SDCL § 34-26-75. If the

duty of a funeral director in South Dakota ever was to invariably discern and follow the decedent's wishes regardless of an absence of a written directive, that no longer is true following the 2022 adoption of SDCL § 34-26-75.

Ordinarily, the failure to follow the directives of a statute establishing a legal duty is negligence per se, and Haase urges that is the case here. A person is negligent if he "violates a statute that is designed to protect against the type of accident the actor's conduct causes, and if the accident victim is within the class of persons the statute is designed to protect." Restatement (Third) of Torts: Liability for Phys. & Emot. Harm § 14 (Oct. 2024 update); see Davies v. GPHC, LLC, 980 N.W.2d 251, 263 (S.D. 2022) ("[W]here a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law." (citation omitted)). "A noncontractual duty may be imposed by common law, statute, implication or operation of law, public policy, or from a failure to exercise that care which a reasonable person would exercise under like circumstances." F & M Agency v. Dornbush, 402 N.W.2d 353, 356–57 (S.D. 1987).

However, the Supreme Court of South Dakota in both Chisum, 283 N.W.2d at 239 and Red Bear, 896 N.W.2d at 277–78 required more than negligence for liability in a claim for disruption of the right to a body. Instead, "one's *intentional interference* with another's legal right to possession of a dead body under [the statutes] constitutes an actionable wrong." Red Bear, 896 N.W.2d at 278 (citing Chisum, 283 N.W.2d at 239–40). "The actionable conduct must be 'willful or malicious, as distinguished from being merely negligent.'" Id. (cleaned up) (quoting Chisum, 283 N.W.2d at 240). In making this determination, the Supreme Court of South Dakota expressly rejected the position of the Restatement (Second) of Torts, which provides that an actor is liable

9

for negligent, reckless, or intentional conduct that interferes with another's custodial right to disposition of remains. Chisum, 283 N.W.2d at 239. The court held a party may only be liable for intentional, willful, or malicious conduct. Red Bear, 896 N.W.2d at 278.

Both Red Bear and Chisum predate the 2022 enactment of SDCL § 34-26-75. Haase argues that, if the intentionality requirement in Red Bear and Chisum remains, it should apply only to the claim of interference in the right of sepulcher and that violations of SDCL § 34-26-75 by Defendant constitute negligence per se under a separate claim. However, nothing in the text of the 2022 revisions to SDCL Chapter 34-26 signals that the South Dakota legislature meant to create a new cause of action against funeral homes or funeral directors. The continued application of the intentionality requirement to Haase's claims (other than perhaps Claims 1 and 2[3]) may have limited impact in that Haase stresses that what Defendants did was plainly intentional and not a product of mere negligence. The holdings of Red Bear and Chisum prompt requiring a showing of more than mere negligence—be it intentional, willful, or malicious conduct—for a recovery for violating SDCL § 34-26-75. Moreover, this Court draws no distinction under South Dakota law—nor did the Supreme Court of South Dakota in Red Bear and Chisum—between the common law claims for interference with the right of sepulcher and violating South Dakota statutes establishing who has the right of sepulcher.

Haase maintains that the Defendants' conduct was intentional in violating SDCL § 34-26-75, entitling her to summary judgment regardless. Defendants contest this for several reasons, including that "children" in SDCL § 34-26-75(4) does not exclude stepchildren and that Haase was estranged from Bill.

---

[3] Defendants have not filed a motion for summary judgment on Claims 1 or 2 for negligent infliction of emotional distress or negligence. The discovery deadline was December 20, 2024, Doc. 16, and the substantive motion deadline was January 17, 2025, Doc. 23.

SDCL § 34-26-75(4) prioritizes the "child" and "children," but does not itself define those terms. The statute later in subpart (10) refers to "next degree of kinship, in descending order, under the laws of descent and distribution" incorporating indirectly South Dakota probate law. SDCL § 2-14-2 contains definitions of terms that apply throughout the code, and 2-14-2(3) defines "children" as including "children by birth and by adoption." The South Dakota Uniform Probate Code explicitly excludes from the definition of "child" a person who is a "stepchild." SDCL § 29A-1-201(6). Thus under SDCL § 34-26-75(4), Haase as the biological child has superior rights and duties for the remains over that of Bill's stepchildren unless Haase was estranged.

Defendants argue that Haase has no rights under SDCL § 34-26-75 because of the operation of SDCL § 34-26-76. Under SDCL § 34-26-76, a person forfeits their right over a decedent's remains and the right is passed to the next qualifying person (1) under the slayer rule; (2) if the person does not exercise the right within two days of notification of the death of the decedent; (3) if the person is a spouse and a pending petition to dissolve the marriage exists; and, applicable here, (4) "[w]here the court, pursuant to § 34-26-78, determines that the person entitled to the right of disposition and the decedent were estranged at the time of death." Estranged means "a physical and emotional separation from the decedent at the time of death that has existed for a period of time that clearly demonstrates an absence of due affection, trust, and regard for the decedent." SDCL § 34-26-76(4).

The parties dispute whether Haase and Bill were estranged at the time of Bill's death. SDCL § 34-26-78 provides a procedure to determine pre-disposition if an estrangement exists: "the court of the county where the decedent resided may award the right of disposition." At issue then is whether this Court may consider if Haase was estranged and forfeited her right of disposition, or whether the Defendants waived this argument by not bringing an action in the court

11

of the county where the decedent resided at the time of the initial dispute. Subsection three of SDCL § 34-26-7 grants a funeral home a remedy to seek such a court order:

> In the event of a dispute regarding the right of disposition, a funeral home is not liable for refusing to accept the remains or to inter or otherwise dispose of the remains of the decedent or complete the arrangements for the final disposition of the remains until the funeral home receives a court order or other written agreement signed by the parties in the disagreement that decides the final disposition of the remains. If the funeral home retains the remains for final disposition while the parties are in disagreement, the funeral home may embalm or refrigerate and shelter the body, or both, in order to preserve it while awaiting the final decision of the court and may add the cost of embalming and refrigeration and sheltering to the final disposition costs. If a funeral home brings an action under this section, the funeral home may add the legal fees and court costs associated with a petition under this section to the cost of final disposition. *This section may not be construed to require or to impose a duty upon a funeral home to bring an action under this section. A funeral home and its employees may not be held criminally or civilly liable for choosing not to bring an action under this section*[.]

SDCL § 34-26-78(3) (emphasis added). Defendants brought no action to determine if Haase was estranged from Bill or who properly had the right of disposition.

Defendants argue that Haase was estranged from Bill and would have no right to the disposition of the body under SDCL § 34-26-75 due to § 34-26-76(4). Haase argues that Defendants forewent their opportunity to raise this issue by not utilizing the procedure to seek a state court ruling.

SDCL § 34-26-76 states that a person "forfeits" the right and duty if the first three subsections apply but that the fourth subsection regarding estrangement applies "[w]here the court, pursuant to § 34-26-78," determines estrangement. Yet § 34-26-78(3) does not oblige a funeral home to seek such a declaration and makes clear that the section "may not be construed to require or to impose a duty upon a funeral home to bring an action under this section." Because a funeral home is not obliged to bring such an action, equitable principles appear not to bar raising estrangement as an affirmative defense to a claim of

12

this sort. The doctrine of waiver is applicable under South Dakota law where a party in possession of any right and "with full knowledge of the material facts, does or forebears the doing of something inconsistent with the exercise of the right." Norwest Bank S.D., N.A. v. Venners, 440 N.W.2d 774, 775 (S.D. 1989). To establish a party waived a right, "there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right." Id. Given that § 34-26-78(3) prevents liability to a funeral home and its employees "for choosing not to bring an action," Defendants' decision to forgo an action in the county prior to the funeral does not demonstrate Defendants' intention to waive the defense of estrangement in a later cause of action.[4] The absence of adjudication under SDCL § 34-26-78(3) does not mean there was no estrangement or entitle an estranged relative of the decedent to recovery when someone not estranged from the decedent directs the disposition of the remains.

A genuine issue of material fact exists on whether Haase was estranged from Bill. Despite SDCL § 34-26-78(3) setting forth a procedure for a state court determination, in a case alleging violation of a right of sepulcher proceeding after the funeral and burial, whether Haase was estranged from the decedent is a question of fact for the jury.

---

[4] Although Defendants did not raise "estrangement" as an affirmative defense in their Answer, Doc. 4, Defendants denied that Haase was entitled to the right to control the disposition of Bill's remains, id. at ¶ 17 (stating "Plaintiff was an excluded heir"). Generally, a defendant waives an affirmative defense if the defense is not raised in a pleading. "However, when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008) (cleaned up and citations omitted). Here, the Defendants denied that Haase had a vested right under the statute, and the parties briefed the issue of estrangement, albeit through the lens of negligence per se. Doc. 34 at 10–12; Doc. 40 at 6–9. No unfair surprise is present; this decision merely clarifies that Defendants have the burden of proving Haase forfeited the right and duty under § 34-26-76(4), rather than requiring Hasse to prove she did not forfeit the right and duty.

13

Where this all leads then is to a conclusion that, although Defendants are wrong as to what duty they owed, Haase is not entitled to summary judgment on the negligence-based claims, under SDCL 34-26-75, or for violation of a right of sepulcher. There exist genuine issues of material fact precluding such a result.

## IV.    Conclusion

For the reasons state above, it is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment on the question of liability for certain negligence claims, Doc. 29, is denied. It is further

ORDERED that the parties cooperate with this Court to set a jury trial date, pretrial conference, and deadlines for requested jury instructions, motions in limine, and witness and exhibit lists.

DATED this 21st day of May, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

14